## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| BRAD KLINGE § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.  SA-20-CV-470-XR |
| § | |
| KBL ASSOCIATES, LLC and KIMBERLY § | |
| LEATHERWOOD, § | |
| § | |
| *Defendants*. § | |

## ORDER

On this date, the Court considered Defendant Kimberly Leatherwood's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (docket no. 5), and the response and reply thereto. After careful consideration, the Court will grant the motion.

### I. Background

This is an action under the Fair Labor Standards Act ("FLSA") for failure to pay overtime. Plaintiff Brad Klinge sues his former employer KBL Associates, LLC and Kimberly Leatherwood, "the owner, principal, officer and/or director of KBL." Compl. ¶ 14. Plaintiff alleges that KBL is a Tennessee LLC not registered to do business in Texas, and that Leatherwood resides in Tennessee. *Id.* ¶ 7-8, 10. KBL provides consulting services for other businesses, and Plaintiff alleges he was employed as a Business Consultant. *Id.* ¶ 13, 19. Plaintiff alleges that he was employed as an hourly employee from August 2019 until March 2020 and regularly worked in excess of forty hours per week, but was not paid an overtime rate for hours worked over forty. Plaintiff alleges that "Leatherwood manages and controls the day-to-day

operations of KBL, including but not limited to the decision to not pay Plaintiff an overtime premium." *Id.* ¶ 15.

Plaintiff filed this lawsuit on April 15, 2020 and served both Defendants. Defendant KBL has conceded personal jurisdiction. Defendant Leatherwood has moved to dismiss for lack of personal jurisdiction. She asserts there is neither specific nor general personal jurisdiction over her, and submits an Affidavit in which she states: (1) she is the Managing Partner of KBL; (2) she has never traveled to Texas for reasons related to KBL business or Plaintiff's employment with KBL; (3) she has not traveled to Texas for any purpose since KBL has existed as an entity; (4) KBL has only had three employees based in Texas in its history, including Plaintiff, and currently has one; (5) KBL has no facility in Texas and its Texas-based employees work from home; (6) KBL's employees based in Texas (including Plaintiff) did not and do not service customers in Texas; (7) she spends no more than five percent of her working time on matters related to Texas customers and/or employees; (8) she had minimal interaction with Plaintiff during his employment and would contact him only when initially assigning customers to him or when some customer-related issue needed to be addressed, which was not frequent; (9) she did not direct the day-to-day functions of Plaintiff's work at KBL and did not communicate with him regarding the day-to-day functions of his employment; (10) she never communicated with Plaintiff about KBL's payroll practices or her role in KBL's payroll practices as applied to his pay; (11) her involvement with KBL's payroll practices as they related to Plaintiff were periodically reviewing and approving his time he entered into KBL's time-tracking software, which she did in Tennessee; and (12) traveling to Texas to defend herself in this lawsuit would be burdensome.

## II. Discussion

**A. Applicable Law**

There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*[1] Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id*.

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. In this case, Plaintiff relies on specific personal jurisdiction. Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Id.* In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

---

[1] Texas's long-arm statute specifically provides that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
    (2) commits a tort in whole or in part in this state; or
    (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
TEX. CIV. PRAC. & REM. CODE § 17.042.

The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). The relationship must arise out of contacts that the *defendant herself creates* with the forum state, not contacts between the plaintiff or third parties and the forum state and not the contacts the defendant makes by interacting with other persons affiliated with the state. *Id.* at 284. Thus, the minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* The plaintiff cannot be the only link between the defendant and the forum. *Id.*

As the party seeking to invoke the power of the court, Plaintiff "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software*, 688 F.3d at 219-20.

**B. Analysis**

Plaintiff does not provide his own evidence or seek discovery on jurisdiction, and instead rests on his pleadings to establish his *prima facie* case. He contends that his allegations that Leatherwood is a joint employer with KBL, which conducts business in Texas, and that Leatherwood specifically made the pay policies (including the decision to not pay Plaintiff an overtime premium) that led to the alleged FLSA violations are sufficient to support the inference that Leatherwood is subject to personal jurisdiction in Texas. Plaintiff asserts that, as managing

4

partner, Defendant Leatherwood has her hand in the day-to-day operations of KBL, including its pay structure and policies that affect all employees, including Plaintiff, a Texas employee. Plaintiff argues that Leatherwood "directed unlawful activity at Texas in the form of an FLSA violation, and the brunt of the injury of that activity was felt by a Texas resident." Docket no. 9 at 6. Plaintiff contends that Leatherwood cannot purposefully avail herself of the benefits and protections of the forum state by hiring employees to work in Texas, without reasonably anticipating being haled into court here. Plaintiff asserts that "Leatherwood hired Plaintiff in Texas to work in Texas, and subsequently improperly paid him in Texas." *Id.* at 7.

Leatherwood contends that Plaintiff focuses on her relationship with Plaintiff and *his* relationship to Texas, rather than *her* relationship with Texas, as is required. Leatherwood notes that whether KBL does some business in Texas (albeit minimal) is not relevant to whether Leatherwood, a separate individual defendant, is subject to personal jurisdiction in Texas. And even if Leatherwood controls the day-to-day operations of KBL, Plaintiff does not allege that she does so in a manner that requires any action deliberately aimed at Texas, much less any action giving rise to the claims in this lawsuit. According to her Affidavit, Leatherwood did not direct Plaintiff's day-to-day work and merely periodically reviewed (in Tennessee) his time, which he submitted in the time-tracking software. After she approved his time entries, she was no longer directly involved in the process of paying Plaintiff. Leatherwood contends that Plaintiff shows only incidental effects in Texas from Leatherwood's conduct in Tennessee.

Plaintiff worked for KBL from August 2019 until March 2020 as a Business Consultant, he worked from home, and he did not have Texas clients. Leatherwood is the Managing Partner, and Plaintiff alleges she manages and controls the day-to-day operations of KBL. There is no

5

allegation that Leatherwood recruited Plaintiff in Texas or that Leatherwood entered into a contract with him to be performed in Texas (even if KBL did). Although Leatherwood did not supervise Plaintiff's day-to-day activities, she did assign him some clients and communicate with him about work, and she reviewed and approved his time sheets in Tennessee. There is no allegation that Leatherwood directed Plaintiff to live or work in Texas or that Leatherwood in any way cared whether Plaintiff lived or worked in Texas. Leatherwood did not pay Plaintiff; KBL did.[2] Although Plaintiff lived and worked in Texas while he was employed by KBL, he apparently did not serve any Texas customers and could have performed his work from any state.

Courts have held that a company's long-standing employment relationship with an employee in another state who works from home may be sufficient to confer personal jurisdiction.[3] In *Wood v. Kinetic Systems, Inc.*, No. CV 09-579-S-CWD, 2010 WL 893647 (D. Idaho Mar. 9, 2010), the court found personal jurisdiction for an employee's FLSA wage claim when the company knew it was hiring an Idaho resident as its employee, the plaintiff signed the

---

[2] For FLSA purposes, courts have held that paying a plaintiff in the forum, and thus committing the statutory violation at least in part within the forum state, may confer specific personal jurisdiction. *Walkinshaw v. Saint Elizabeth Regional Medical Ctr.*, 428 F. Supp. 3d 171, 179 (D. Neb. 2019) ("CommonSpirit, assuming it does pay the Plaintiffs, would reasonably have many contacts with Nebraska and those contacts relate to the core of this suit, thus establishing specific personal jurisdiction."). There is no allegation that Leatherwood paid Plaintiff. Because KBL paid Plaintiff, it has conceded personal jurisdiction.

[3] There are few cases involving work-from-home employees. In *Yocum v. Rockwell Medical Technologies, Inc.*, No. 12-cv-568, 2012 WL 2502701 (S.D. Cal. June 27, 2012), the district court found personal jurisdiction in California over a Michigan company that employed the plaintiff, allowed him to telecommute from home in California, maintaining this connection for two years and eight months, and finally terminating Plaintiff. Because those contacts were part of an employment relationship with the plaintiff, and the retaliation claims arose from that relationship, the court found personal jurisdiction. *Yocum* was not an FLSA case, and involved the plaintiff's relationship with his direct employer, not an individual who may be liable as an employer under the FLSA. In *Pushor v. Mount Washington Observatory*, No. 2:17-cv-354-NT, 2018 WL 3487579 (D. Me. May 17, 2018), the employer's allowing the plaintiff to work from home in Maine for over two years (despite initially hiring him to work in New Hampshire), was insufficient, without more, to show specific personal jurisdiction in Maine for an FLSA claim, even for the direct employer.

employment agreement at his home in Idaho, the plaintiff used his home office to perform work on behalf of the company, the contract acknowledged that plaintiff's "report to work" location was in Idaho, the company paid local union dues in Idaho, paid wages and taxes in Idaho, and was registered to do business in Idaho. The court noted that the company purposefully availed itself of the privilege of conducting activities in Idaho by hiring an Idaho employee (and employing him for six years) and maintaining the ability to do business as a contractor in Idaho. Thus, there appears to be sufficient basis for KBL's concession on personal jurisdiction.

However, each defendant's contacts must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984). It is not enough to simply rest on the use of the collective term "Defendants" in the allegations. *General Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (citing *Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980) (holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process). Plaintiff seeks to hold Leatherwood liable as an employer under the FLSA and appears to contend that the fact that Leatherwood may be liable under the FLSA for being an employer of a Texas employee is enough for specific jurisdiction over the FLSA claims. While a direct employer such as KBL may be subject to personal jurisdiction based on the employment relationship and making payments in the forum, a finding that an individual manager of the company is an employer for FLSA purposes does not alone establish personal jurisdiction in the forum state. *Matlock v. Wal-Mart Stores, Inc.*, No. 3:07-1360-B ECF, 2008 WL 11424341, at *3 (N.D. Tex. July 10, 2008) (noting that finding personal jurisdiction simply because of potential employer liability would conflate personal jurisdiction with liability).[4] The

---

[4] An individual may qualify as an employer if she is a person acting directly or indirectly in the interest of an employer in relation to an employee, and the Fifth Circuit uses the economic realities test to determine whether

7

individual must still have relevant contacts with the forum. Further, although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for specific jurisdiction has been presented. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). Establishing a *prima facie* case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state. *Id.*

Plaintiff argues in his response brief that Leatherwood hired Plaintiff to work in Texas and subsequently improperly paid him in Texas, but neither of these allegations is found in the Complaint, and thus these need not be accepted as true. There is no allegation or evidence that Leatherwood hired Plaintiff or that Leatherwood paid Plaintiff at all, much less in Texas.

In *Lewis v. Ark-La-Tex Financial Services, LLC*, No. 4:08-CV-00234, 2008 WL 2471893 (E.D. Mo. June 10, 2008), the district court rejected the plaintiff's argument that if the individual defendant is an employer as defined by the FLSA, then the court has personal jurisdiction in the state where the plaintiff was employed, noting that while the allegations might establish that the individual defendants were employers, the plaintiff still failed to demonstrate that they deliberately engaged in any personal contacts with the forum or purposefully availed themselves of the privileges of conducting business activities therein. Thus, potential liability as an employer alone is insufficient.

---

there is an employer/employee relationship. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). To determine whether an individual is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Plaintiff does not allege that Leatherwood did any of these things in Texas.

In *Donovan v. Grim Hotel Company*, 747 F.2d 966 (5th Cir. 1984), the Fifth Circuit considered personal jurisdiction in an FLSA suit against five hotel corporations and their president. The plaintiffs whose wages were in issue worked in five hotels in five different Texas cities, and the individual defendant was president of the five hotel-owning corporations. The individual defendant controlled the hotel corporations and guided their policies – only he could authorize compliance with the FLSA – and the Fifth Circuit characterized him as "top man" such that he could be considered an employer.

The Court then considered personal jurisdiction and noted that the individual defendant himself had hired the managers of the five Texas hotels and delegated to them the authority to hire other employees, the very persons who were plaintiffs in the action. He also regularly traveled to Texas in connection with the operation of the Texas hotels and made personal loans to the Texas hotels and personally signed loan agreements for their improvements. The Fifth Circuit found that this conduct satisfied the doing-business-by-contract test of the Texas long-arm statute, including the employee recruitment test of the statute. The Fifth Circuit rejected the defendant's argument that he was protected by the fiduciary shield because he simply acted in his corporate capacity, noting that he was an employer and personally liable for unpaid statutory wages to his employees and consequently, "his Texas-connected acts that produced injurious effects to the Texas-based employees cannot, as a matter of law or fact, be regarded as performed solely in his corporate capacity." The Fifth Circuit noted moreover that his personal presence in Texas in connection with those acts and his personal acts in connection with those Texas enterprises were not insubstantial. The Fifth Circuit then found that the long-arm statute was consistent with due process insofar as the defendant purposefully availed himself of the benefits

of Texas and engaged in conduct that bore reasonably foreseeable consequences in Texas, and found that Texas and 177 Texas employees had a strong interest in litigating the wage and hour dispute in Texas. The Fifth Circuit stated, "Consistent with due process, an employer fairly may be sued for employment practices in the forum in which he has recruited his employees and caused them to undertake their work." *Id.* at 974.

In *Cooke v. Jaspers*, No. H-07-3921, 2010 WL 918342 (S.D. Tex. Mar. 10, 2010), the district court found specific jurisdiction in Texas over a Colorado individual defendant who (1) owned the company with the Texas location where the plaintiff worked, (2) kept the payroll records, (3) issued the paychecks, and (4) set the day-to-day operational policies (including how employees were paid and how records of time worked were created and maintained) for the company. Similarly, in *Gutierrez v. Drill Cuttings Disposal Co., LLC*, 319 F. Supp. 3d 856 (W.D. Tex. 2018), this Court found specific personal jurisdiction over the plaintiffs' Louisiana employer company and the Louisiana individuals who controlled all business decisions and employment policies for the company including pay, locations worked, and schedules for work done in Texas. In *Kelly v. Jin Woo Lee*, No. 5:16-CV-269-DAE, 2016 WL 11585288, at *4 (W.D. Tex. Oct. 18, 2016), the plaintiff entered into an employment contract with 5365 Southcross II LP to work as a property manager at a mobile home park in Texas. The plaintiff sued the sole shareholder of the company that owned the property the mobile home park was located on in Texas, and alleged that while she was employed, she took direction from the individual shareholder defendant, who visited once every month or two to oversee the general operation of the property. When the plaintiff complained to the defendant about not receiving overtime, he became threatening and refused to pay her overtime hours, and eventually

terminated her at the property. These acts in Texas were sufficient to confer personal jurisdiction.

These cases are consistent with *Donovan v. Grim Hotel*. But in all of those cases the company had a corporate office or business location(s) in Texas and employed the plaintiff employees at its business location in the forum, and the individual had meaningful contacts with the forum because of the business location in Texas. In *Grim Hotel*, the individual hired the managers to work at his hotels in Texas, and the managers then hired the plaintiff employees to work at his hotels in Texas, and he himself engaged in meaningful activity in Texas. Although Leatherwood is "managing partner," there are no allegations that she hired anyone to work in Texas, that she conducted business in Texas, or that she had meaningful contacts with Texas related to this litigation or otherwise.

Plaintiff relies on *Carmona v. Leo Ship Management, Inc.*, 924 F.3d 190 (5th Cir. 2019), in which a ship crewman sued the company managing the vessel for negligence after he was injured by pipes falling on his leg. The management company supplied the employees who supervised the crew. It was undisputed that the management company had no control over where the ship docked and thus did not purposefully dock in Texas. But once the ship docked, the company was present in the state of Texas and the Fifth Circuit noted that in most cases, a defendant's commission of a tort while physically present in the state will readily confer specific jurisdiction. The dispute centered on whether the fact that the management company did not choose to be present in Texas was sufficient to deny specific jurisdiction.

The Fifth Circuit held that the company purposefully availed itself of the benefits and protections of Texas when its employees voluntarily entered the jurisdiction aboard the vessel.

11

Although the company had no control over the vessel's course, the ship management agreement contemplated that the ship would travel to locations throughout the world and the company received actual notice that the ship would dock in Texas with sufficient time to cancel the contract, meaning the company "was hardly compelled to travel to Texas against its will." *Id.* at 196. Because it "made a deliberate choice to keep its employees aboard a ship bound for Texas," and "deliberately permitted its employees to enter Texas," the Fifth Circuit held, "[it] may not now escape liability resulting from its considered commercial decision." *Id.*

It is important to note, however, that it was not just the injured plaintiff who was in Texas at the time of the tortious conduct and injury. The management company's employees were in Texas, and the management company conceded that most of the plaintiff's claims resulted from its conduct in Texas after the ship's arrival there—the company's crewmember had inspected the pipe bundles but failed to ensure they were properly stacked for discharge, and that negligence committed by the company's employee in Texas allegedly caused the plaintiff's injury. Thus, *Carmona* stands for the rule that if an employer knowingly allows his employees into the forum, he should reasonably anticipate being haled into court for any torts committed by those employees in the forum. That is not the situation here—none of Leatherwood's employees committed torts against Plaintiff in Texas. Leatherwood's only connection to the forum is Plaintiff, and this is insufficient to confer personal jurisdiction. *Walden*, 571 U.S. at 284.

It may be that an employer should reasonably anticipate being haled into court where it has knowingly chosen to employ employees for claims arising out of that employment. But there is no indication that Leatherwood, as opposed to KBL, was in any way involved in choosing to

12

employ Plaintiff, knowing he was in Texas. An FLSA plaintiff may have a contract of employment with their direct employer sufficient to invoke specific personal jurisdiction for claims arising out of that employment, but individual managers like Leatherwood are independent from the general employer even though they may be held accountable for FLSA violations. Had Leatherwood herself hired Plaintiff to work in Texas or hired managers or supervisors to work in Texas who then hired Plaintiff, purposeful availment would be more clear. But if KBL hired and paid Plaintiff, its acts cannot be ascribed to Leatherwood under the fiduciary shield doctrine. She can be liable only for her personal acts. *See Wireless Toyz*, 225 F. App'x at 795 ("So while the fiduciary-shield doctrine could prohibit this court from ascribing acts of the [the company] to [the individual], it does not prohibit [the individual] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation.").

At most Plaintiff has shown that Leatherwood made decisions in Tennessee that affected KBL's employees, including Plaintiff in Texas. But knowing that Plaintiff was a Texas resident and that her decisions would cause harm to him in Texas is insufficient. *Panda Brandywine*, 253 F.3d at 869 ("*Calder*'s effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state"). The foreseeability of causing injury in Texas is not a sufficient benchmark for specific jurisdiction. *Id.*; *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009) ("Under *Calder*, . . . the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts

toward the forum). Texas was not the focal point of any of Leatherwood's decisions, nor did she have any meaningful contacts with Texas connected to this litigation. Any effects in Texas were at most incidental to her decisions made in Tennessee. The Court therefore finds that it lacks personal jurisdiction over Leatherwood.

## Conclusion

Defendant Kimberly Leatherwood's motion to dismiss for lack of personal jurisdiction (docket no. 5) is GRANTED, and Plaintiff's claims against Leatherwood are DISMISSED WITHOUT PREJUDICE.

SIGNED this 19th day of June, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE